# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**JEFFREY SCOTT,**

         **Plaintiff,**

**-vs-**           Case No.  6:05-cv-683-Orl-18UAM

**K.W. MAX INVESTMENTS, INC.,
WILLIAM DAVIDSON, MICHAELINE
DAVIDSON,**

         **Defendants.**

_____

**OTIS A. JONES,**

         **Plaintiff,**

**-vs-**           Case No.  6:05-cv-765-Orl-18KRS

**K.W. MAX INVESTMENTS, INC.,
WILLLIAM DAVIDSON, MICHAELINE
DAVIDSON,**

         **Defendants.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

      This cause came on for consideration without oral argument on the following motions filed herein:

> **MOTION:**    **DEFENDANTS' MOTION FOR ATTORNEY'S FEES (6:05-cv-683-Orl-18UAM, Doc. No. 65)**
>
> **FILED:**       **February 20, 2007**

> **MOTION:** **DEFENDANTS' MOTION FOR ATTORNEY'S FEES (6:05-cv-765-Orl-18KRS, Doc. No. 63)**
>
> **FILED:** February 20, 2007

In two related cases involving the same parties and similar issues of law, the district court granted summary judgment in favor of Defendants on the basis that Plaintiffs were not covered – neither individually nor through the all-inclusive "enterprise theory" – under the Fair Labor Standards Act, 29 U.S.C. § 207 ("FLSA"). The Clerk entered judgment and closed both cases.

Defendants now seek attorney's fees in both cases pursuant to 28 U.S.C. § 1927 and the district court's "inherent power to award attorney's fees for bad-faith litigation." With the consent of Honorable G. Kendall Sharp, the presiding district judge, because the motions are appropriately considered together, I now address the motions in both cases.

## I. PROCEDURAL HISTORY

Defendant K.W. Max Investments, Inc. ["K.W. Max"] is a Florida corporation that purchases and re-sells residential homes and property in Florida. William Davidson is President of K.W. Max, and Michaeline Davidson is its Secretary. Plaintiffs Jeffrey Scott and Otis A. Jones worked as laborers for K.W. Max between 2003 and 2004. Plaintiffs performed construction and other maintenance work for K.W. Max on two property sites in Grant, Florida – a house on U.S. Highway 1 ("U.S. Highway 1 House") and a lot on an island in Grant, Florida ("Lot 10 House").

### A. Counsel's Prior Case Against Defendants

Prior to filing the cases now before the Court, Plaintiffs' counsel, representing different plaintiffs (not Scott and Jones) filed a similar FLSA action against Defendants K.W. Max, William Davidson, and Michaeline Davidson on June 2004. *Ermer v. K.W. Max Investments, Inc.*, 6:04-cv-981-Orl-19KRS, Doc. No. 1. Ermer also worked on the U.S. Highway 1 House and Lot 10 House. *See Ermer*, Doc. No. 43 at 6-7.

On March 30, 2005, Defendants moved for summary judgment on the basis that the plaintiffs in that case were not covered under the FLSA. *Id.* According to Defendants, the plaintiffs in *Ermer* were not covered under the FLSA because they were not "engaged in commerce" or "engaged in production of goods for commerce," as required by 29 U.S.C. § 207. Defendants further argued that K.W. Max was not an "enterprise" within the meaning of the FLSA because "its annual gross volume of sales made or business done has always been less than $500,000," as required by 29 U.S.C. § 203(s)(1)(A). *Id.* at 17.

On March 31, 2005, the parties settled at mediation, and the parties jointly moved for approval of the settlement agreement and to dismiss the case with prejudice *Ermer*, Doc. Nos. 47, 50. Under the terms of the settlement agreement, Defendants agreed to pay a total of $40,000 to the two plaintiffs.[1] *Ermer*, Doc. No. 50-2 at 1-2. On April 22, 2005, the district court approved "the settlement agreement as a fair and reasonable resolution of bona fide disputes over FLSA provisions," and dismissed the case with prejudice. *Ermer*, Doc. No. 51.

---

[1] The breakdown of the $40,000 settlement was as follows: 1. $18,000 to one plaintiff ($9,000 as back wages and $9,000 in liquidated damages); 2. $9,000 to the second plaintiff ($4,500 as back wages and $4,500 in liquidated damages); and 3. $13,000 to counsel for plaintiffs as fees and costs. *Ermer*, Doc. No. 50-2 at 1-2.

**B.     The Current Action**

On May 5, 2005, Plaintiff Scott filed a complaint in the current action against Defendants K.W. Max, William Davidson, and Michaeline Davidson, seeking to hold Defendants liable for failing to pay him overtime wages in violation of the FLSA, 29 U.S.C. § 216(b). *Scott v. K.W. Max Investments, Inc.*, 6:05-cv-683-Orl-18UAM, Doc. No. 1. On May 19, 2005, Plaintiff Jones filed a similar FLSA action against Defendants under a separate case number. *Jones v. K.W. Max Investments, Inc.*, 6:05-cv-765-Orl-18KRS, Doc. No. 1.[2] Both Plaintiffs asserted that they were "engaged in commerce" or, alternatively, that Defendant K.W. Max was "an enterprise engaged in commerce or in the production of goods for commerce" as defined by the FLSA. *Scott*, Doc. No. 1 at 2; *Jones*, Doc. No. 1 at 2.[3]

Defendants deposed Scott and Jones on December 8, 2005. *Scott*, Doc. No. 34-2; *Jones*, Doc. No. 30-2. On June 14, 2006, Defendants filed motions for summary judgment in both cases. *Scott*, Doc. No. 33; *Jones*, Doc. No. 29. As in the *Ermer* case, Defendants claimed that Plaintiffs were not covered under the FLSA because they were not "engaged in commerce" or "engaged in production of goods for commerce," as required by 29 U.S.C. § 207; and that K.W. Max was not an "enterprise" within the meaning of the FLSA because "its annual gross volume of sales made or business done has always been less than $500,000," as required by 29 U.S.C. § 203(s)(1)(A). *Id.* at 8, 10.

---

[2]     Defendants are represented by the same counsel in both cases. Plaintiffs Scott and Jones have the same counsel.

[3]     Both Plaintiffs actually pleaded that "Defendant" was "engaged in commerce," but it appears that this was a typographical error.

On July 7, 2005, Plaintiffs moved for extensions of time to file their memoranda in opposition to the summary judgment motions. *Scott*, Doc. No. 37; *Jones*, Doc. No. 33.  Plaintiffs noted that Defendants had filed their summary judgment motions well before both the discovery deadline and the deadline to file dispositive motions in both cases. *Id.* at 1-2.  Plaintiffs explained that they needed to conduct more discovery related to the issue of coverage under the FLSA, including taking the deposition of K.W. Max's corporate representative, prior to responding to the summary judgment motions. *Id.*

The motions for extension of time were granted in both cases. *Scott*, Doc. No. 38 (granted July 10, 2007); *Jones*, Doc. No. 36 (granted July 14, 2007).  Defendants then produced to Plaintiffs the tax returns of K.W. Max and the individual Defendants for the relevant time period. *Scott*, Doc. No. 65 at 8; *Jones*, Doc. No. 63 at 7.  The tax returns for K.W. Max showed that its annual gross volume of "sales made or business done" was less than $500,000 for each of the years in question. *Id.* at 7-8.

Plaintiffs deposed K.W. Max's corporate representative in August 2006. *Id.*  On September 1, 2006, Plaintiffs filed memoranda in opposition to Defendants' summary judgment motions. *Scott*, Doc. No. 48; *Jones*, Doc. No. 45.  Plaintiffs did not make any argument that they were individually covered under the FLSA. Instead, Plaintiffs argued that Defendants William Davidson and Michaeline Davidson were "joint employers" with K.W. Max and/or that K.W. Max was an "artificial shell corporation solely used by William Davidson and Michaeline Davidson to circumvent paying overtime to their employees in accordance with the FLSA." *Id.* at 2.  Plaintiffs claimed that K.W. Max's purpose was as "an investment company for anything the Davidsons might be interested in" and that

"coverage is established through the [Davidsons'] revenues over $500,000.00 from investments and activities as an enterprise engaged in commerce." *Id.* at 4, 9.[4]

In their summary judgment motions, Plaintiffs also requested leave to amend their complaints to assert that all three Defendants were joint employers under the FLSA. *Id.* Plaintiffs argued that even though the deadline to file motions to amend the pleadings had passed, case law provides that leave to amend "shall be freely given when justice so requires." *Id.*

On February 6, 2007, the Honorable G. Kendall Sharp granted summary judgment in favor of the Defendants in both cases. *Scott*, Doc. No. 60; *Jones*, Doc. No. 58. Judge Sharp considered and rejected Plaintiffs' arguments regarding Defendants as joint employers and found that Plaintiffs were not covered under the FLSA, neither individually nor through the enterprise theory. *Id.* The Clerk then entered judgment against each Plaintiff in favor of Defendants, and closed both cases. *Scott*, Doc. Nos. 61, 76; *Jones*, Doc. No. 59, 73.

### C.  **Defendants' Motion for Attorney's Fees**

On February 20, 2007, Defendants filed the motions for attorney's fees (now before the Court), seeking attorneys' fees from "Plaintiff[s], Plaintiff[s]' counsel, or both . . . ." *Scott*, Doc. No. 65 at

---

[4]    Plaintiffs relied on the individual Defendants' personal income tax returns in their attempt to demonstrate that Defendants were engaged in interstate commerce because they received income from interstate sources. *See Scott*, Doc. No. 60 at 7; *Jones*, Doc. No. 58 at 7.

As support for asserting that the three Defendants were joint employers, Plaintiffs cited to evidence that the individual Defendants prepared Plaintiffs' payroll checks; determined Plaintiffs' rate of pay and raises; and made the decisions to hire and fire the Plaintiffs. *Scott*, Doc. No. 48 at 4; *Jones*, Doc. No. 45 at 4. Plaintiffs also argued that, despite Defendants' claims that K.W. Max owned the U.S. Highway 1 House and the Lot 10 House, the individual Defendants originally purchased the two properties; then transferred the properties to K.W. Max through a shareholder loan; but kept the deeds and property insurance for the properties in the names of the individual Defendants, even claiming a homestead exemption on the Lot 10 House. *See id.* at 3-4.

2; *Jones*, Doc. No. 63 at 2. Defendants seek awards of $38,000 in attorney's fees for each case pursuant to 28 U.S.C. § 1927 and the district court's "inherent power to award attorney's fees for bad-faith litigation." *Id.* Defendants claim that Plaintiffs initiated these actions in "bad fath" and that Plaintiffs' counsel "multiplied the proceedings unreasonably and vexatiously" because Plaintiffs and counsel "knew, or should have known, there was no FLSA coverage." *Id.* at 2, 9. Plaintiffs oppose both motions. *Scott*, Doc. No. 70; *Jones*, Doc. No. 66.

## II.   THE LAW

### A.   Standard for Attorney's Fees under 28 U.S.C. § 1927

Defendants seek a severe sanction, and the standard is high. 28 U.S.C. § 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct." The United States Court of Appeals for the Eleventh Circuit has observed that the plain language of § 1927 does not provide a "'catch-all' provision for sanctioning objectionable conduct by counsel." *Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997). Rather, the Court may only impose award sanctions under § 1927 where: 1.) the attorney engaged in "unreasonable and vexatious" conduct; 2.) that conduct "multiplie[d] the proceedings"; and 3.) the amount of the sanction bears a "financial nexus to the excess proceedings, *i.e.*, the sanction may not exceed the costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *Id.* (citations omitted).

Section 1927 does not define "vexatious." The United States Court of Appeals for the Eleventh Circuit has stated, however, that "[b]ad faith is the touchstone" for § 1927 sanctions.

*Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003). Indeed, the Eleventh Circuit has also explained that § 1927 was designed to sanction attorneys who "willfully abuse [the] judicial process by conduct <u>tantamount to bad faith</u>." *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991) (emphasis added). "'[B]ad faith' in this context means *subjective* bad faith – that is, deliberate wrongdoing, such as proceeding with claims that attorney knows for a fact are false or frivolous." *Amlong & Amlong, P.A. v. Denny's Inc.*, 457 F.3d 1180, 1190 (11th Cir. 2006). The Eleventh Circuit has also warned that "[w]hen it becomes apparent that discoverable evidence will not bear out the claim, the litigant and his attorney have a duty to discontinue their quest." *Avirgan*, 932 F.2d at 1582.

### B.     The Court's Inherent Power

The Court may also award attorney's fees as part of its "inherent power to control the proceedings before it" – a power that is separate and distinct from its power to sanction provided by § 1927. *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1545 (11th Cir. 1993). Pursuant to this "inherent power," the Court may assess attorney's fees where a party has "acted in bad faith, vexatiously, wantonly or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-46 (1991). The United States Supreme Court has explained that "[i]n this regard, if a court finds that fraud has been practiced upon it, or that the very temple of justice has been defiled, it may assess attorney's fees against the responsible party." *Id.* at 46 (internal quotation omitted).

According to the Eleventh Circuit, "[t]he key to unlocking a court's inherent power is a finding of bad faith." *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998). Therefore, as with § 1927 sanctions, the imposition of sanctions pursuant to the Court's "inherent power" is premised on a finding of "bad faith." Similarly, in the context of "inherent power" sanctions, the Eleventh Circuit

has stated that "[a] finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *Barnes*, 158 F.3d at 1214.[5] Further, a party also shows bad faith by "delaying or disrupting the litigation or hampering enforcement of a court order." *Id.* (citing *Primus Automotive Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997)).

The Court may exercise its inherent power to sanction bad faith misconduct even if that conduct could be sanctioned under a statute or procedural rule (such as § 1927 or Federal Rule of Civil Procedure 11). *See Chambers*, 501 U.S. at 49-51. However, when bad faith conduct in the course of litigation could be adequately sanctioned under a statute or rule, the Court ordinarily should rely on the statute or rule, and not on its inherent power, which the Court should exercise with "great caution." *Id.*

### C. FLSA Coverage

Under the FLSA, an employer is required to pay overtime compensation if the employee can establish "individual coverage" or "enterprise coverage." *Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1265-66 (11th Cir. 2006). For "individual coverage" to apply under FLSA, the employee must prove that he or she was: 1. engaged in commerce or 2. engaged in the production of goods for

---

[5] Even though the Court's "inherent power" is distinct from its power pursuant to § 1927, as previously discussed, the Eleventh Circuit applies a standard for § 1927 that is tied to the standard for "bad faith" — *i.e.*, the wilful abuse of the judicial process by conduct <u>tantamount to bad faith</u>. Therefore, the law establishing the "bad faith" standard pursuant to the Court's inherent power should provide insight into the standard under § 1927.

commerce. 29 U.S.C. § 207(a)(1).[6] An "enterprise engaged in commerce or in the production of goods for commerce" under the FLSA is an employer that:

> has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and . . .
>
> is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 . . .

29 U.S.C. § 203(s)(1). "Commerce" is defined as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b).

## III. ANALYSIS

Defendants argue that at various times during the litigation of these cases, Plaintiffs and/or Plaintiffs' counsel should have dismissed their claims because they or their counsel should have realized that they could not prove coverage under the FLSA. According to Defendants, Plaintiffs and Plaintiffs' counsel knew or should have known this based on:[7]

---

[6]The FLSA provides that:

> no employer shall employ any of his employees who in any workweek is <u>engaged in commerce or in the production of goods for commerce</u>, or is <u>employed in an enterprise engaged in commerce or in the production of goods for commerce</u>, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed

29 U.S.C. § 207(a)(1) (emphasis added).

[7] The parties did not present their arguments in discrete, numbered categories, but for clarity's sake, I have grouped the parties' main arguments.

1. the summary judgment motion filed in the earlier *Ermer* case (and prior to filing the current cases) based on similar facts and legal issues;

2. Plaintiffs' December 8, 2005 depositions which made clear that they were not covered as individuals "engaged in commerce";

3. the fact that Plaintiffs required more discovery and extensions of the discovery deadline in order to oppose summary judgment in these cases;

4. Defendants' tax returns, which were produced in discovery around July 2006, that showed that K.W. Max did not have more than $500,000 in sales made or business done in the relevant years; and/or

5. the deposition of K.W. Max's corporate representative, which supported lack of coverage under the FLSA.

Defendants also allege that Plaintiffs filed these cases soon after the *Ermer* settlement in order to harass and extract another settlement from Defendants.

Plaintiffs respond by arguing that Defendants failed to support their motion with "meaningful evidence" that Plaintiffs or Plaintiffs' counsel litigated these cases vexatiously or in bad faith. *Scott*, Doc. No. 70 at 2-3; *Jones*, Doc. No. 66 at 2-3. Plaintiffs also counter by: 1. noting that the parties settled the *Ermer* case prior to a ruling on the summary judgment motion, and arguing that if the *Ermer* case was without merit, Defendants would not have settled; 2. arguing that Plaintiffs and their counsel had to conduct further discovery and take Defendants' depositions because the individual Defendants provided false testimony as to who owned the Lot 10 House and U.S. Highway 1 House on which Plaintiffs worked; 3. claiming that these cases involved issues of first impression and that

the district court recognized this fact in its order on the summary judgment motions[8]; and 4. asserting that the Plaintiffs and their counsel were zealous, not frivolous, in their representation.

The record in both cases fails to support a finding of bad faith or conduct "tantamount to bad faith" on the part of Plaintiffs or Plaintiffs' counsel such that § 1927 or "inherent power" sanctions are warranted. Counsel for Plaintiffs filed these cases shortly after receiving attorneys' fees as a result of the *Ermer* settlement; were dilatory in asserting that the individual Defendants and K.W. Max were "joint employers"; and ultimately lost on summary judgment – the district court having considered and rejected Plaintiffs' joint employer arguments. These facts, however, are insufficient to demonstrate that Plaintiffs and their counsel "knowingly or recklessly" pursued frivolous claims or that they argued meritorious claims for the purpose of harassing Defendants. *Barnes*, 158 F.3d at 1214; *see also Schwartz*, 341 F.3d at 1225 (the Court may not impose § 1927 sanctions for "mere negligence," and "something more than a lack of merit is required."); *Rothenberg v. Sec. Mgmt. Co., Inc.*, 736 F.2d 1470, 1472 (11th Cir. 1984) (the bad faith inquiry focuses "'primarily on the conduct and motive of a party, rather than on the validity of the case'").

Accordingly, I respectfully recommend that Defendants' Motion for Attorneys' Fees (*Scott v. K.W. Max Investments, Inc.*, 6:05-cv-683-Orl-18UAM, Doc. No. 65) and Defendants' Motion for

---

[8] In opposing summary judgment, Plaintiffs argued that the individual Defendants' revenues from sales of stocks and mutual funds that were reinvested in other stocks and mutual funds totaled over $500,000.00 and should be included in the calculation regarding FLSA enterprise coverage. The district court rejected the argument, stating that "these assets offer little indication of the size of any alleged business enterprise between the Davidsons and K.W. Max and should not be included in a calculation of annual gross volume of sales or business done." *Scott*, Doc. No. 60 at 8; *Jones*, Doc. No. 58 at 8. The district court did state that no other case in the Eleventh Circuit had addressed this issue, but cited to a district court case from the Western District of Tennessee addressing a similar issue. *See id.* n.3.

Attorneys' Fees (*Jones v. K.W. Max Investments, Inc.*, 6:05-cv-765-Orl-18KRS, Doc. No. 63) be **DENIED**.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on August 30, 2007.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
The Honorable G. Kendall Sharp
Counsel of Record
Unrepresented Parties